of New York. Thank you, your Honor. Attorney James Wojcik for the defendant appellant, Carl Kuer. Your Honor, we respectfully request this court reverse the district court's decision granting the appellee's plaintiffs motion and limine, which precluded three out of the four tests contained in our expert report. The district court's exclusion of was manifestly erroneous and inconsistent with precedent held by this court. The record advances the district court clearly did not conduct pursuant to its Gilbert gatekeeping obligation an examination, let alone a rigorous examination of the information contained in the expert report. The significance of this is that what the district court did in airing precluded evidence, the prior of fact, here's a jury, which prejudiced my client by blocking relevant testimony and information put forth as evidence to the jury. At further point of fact, the record shows that at the time the court granted the plaintiffs motion and limine, it did not speak or accept oral argument. The court did not ask counsel any follow-up questions on the motion papers prior to issuing its oral decision. The oral decision only cites one case, which the courts referred to as Williams v. GSX Transportation, which is a Florida Circuit Court case. As contained in the legal argument of the brief, the court's reliance on this Florida State case is in error because when you review the case, that Florida State case applied the FRI standard at precluding one of the tests, the FBS test. The court relied on the FRI standard, which is the wrong standard as Daubert rejects FRI and the court clearly ignored this precedent. Essentially what the record shows is the district court and its gatekeeping role rendered a determination opposing counsel to void the expert but then it restricted and precluded any substantive line of question that we could ask the expert as a means of proffering his expert opinion. The record clearly shows the court did not conduct any such inquiry. The proffered expert report clearly shows the credentials of a professional who applied scientific principles in a clearly written expert report and opinion. The context of the oral decision in sight of this authority precluded any way that that expert could take the stand and testify to any substantive questions. This court has consistently held that the admissibility of evidence at the trial court level and the rejection of expert testimony is the exception rather than the rule as contained in our brief and cited. Further, the record clearly shows upon cross examination of the plaintiff's expert witness that he testified, he used self-reporting inventory and in fact was an advocate. We had no way to put on proof to argue that fact and then that testimony basically became the law of the case. Our expert's report contained 50 single page pages of information of records reviewed relevant medical history of the plaintiff, vocational records, history and background information deemed relevant in his report. The court precluded any of that information coming in. This is just Luria and Subhuchik. So I understood that Judge Scranton, I believe it was, who was the district judge, was faulting your side for not making these arguments I guess the arguments that you're making here on appeal. Is he wrong about that? Well, we weren't allowed to make an argument, an oral argument. The court came out, informed the attorney that he made a decision and that transcript is contained in my brief. Secondly, your honor, the court in that oral directive or decree didn't even refer to the information we provided because there was an affidavit, it was a joint defense of the motion between our side and the state. And the court didn't acknowledge that in the decision. It was a rather hastily convened oral argument and we weren't given the opportunity to disseminate any of the information. Mr. Wujcik, the opportunity you were talking about in opposition, the other side put in an affidavit from an expert saying why three of the four tests were either unreliable and or irrelevant to the plaintiff's claims. In response to that, you put in on pages, this is 202 of 203 of your affirmation in opposition where it's like a page where you just say it's premature and that this should be reserved for cross. All you had to do was put in something from Dr. Fisher. This is not about his credentials, this is about the reliability of these particular tests. All you had to do is put in an affidavit from your expert explaining why those tests are reliable and or irrelevant and Judge Scranton in his oral ruling just came out and said it's your burden to show reliability under Daubert and you didn't do that in opposition. I don't understand why there would be an abuse of discretion, just going back to Judge Ollier's point. It's not like he missed something. I looked at your affirmation. It doesn't reference your expert's report. It doesn't say this is already in my expert's report. All it says is this is premature and it should be left to cross. How did you satisfy your burden of showing reliability on that? Again, Your Honor, because in my affidavit I refer specifically to the memorandum of law that the state proffered and the reason there wasn't, I'll be just candid with you, the reason we didn't get an affidavit from the doctor is number one, he was out of the country and number two, we felt we had sufficient information for the court to review and at least allow him into the courtroom to testify as to what and why he used those tests. I don't see why you think a memorandum of law would be sufficient to respond to the reliability of particular tests. I don't understand why, and I don't even see a reference to the other side's memo of law. I'm not even sure that's part of our record here, but this, in my experience, I've been district judge for a long time, you would put it in opposition, either referencing something that's already in your expert report regarding reliability or providing an additional declaration, if he's out of the country, saying we need some additional time to do this. I just don't see where the burden was. Dalbert requires you to show reliability. You didn't ask for a hearing either. You could have said we want a hearing on this, and you didn't request a hearing either. I did prior to trial, and I did make a motion for the court to reconsider. It was not done instantaneously after the motion was heard, because the trial was scheduled for September, and we were looking at when the trial got canceled in September, got moved to the following March, and then subsequently moved to the following September, at which time I did bring this issue up to the court prior to trial, after it was determined that the parties couldn't settle. And so what we're asserting, your honors, is the fact that pursuant to Dalbert, they're in, and I'm going to screw up the way you pronounce that case, but it says the court has to undertake a rigorous examination. That didn't happen here. And I understand your honors' point, but I would like to assert the fact that we should have been given an opportunity, at least to submit additional documentation and address any of the court's concerns, or at the very least, let Dr. Fisher into the courtroom to testify about these tests. And that wasn't made available to us. Would you, Judge Parker, do you have any follow-up questions on that point? No. Okay. Mr. Widjuk, would you just briefly address the damages issue? Yes. What we assert is that the court abused its discretion on the remediator as the jury basically compounded the damages against my client. They assessed damages against the state and then basically compounded those damages against my client. Specifically, they assessed economic damages against it. He's an employee of the state of New York. And basically, the damages against the state were multiplied against my client. And according to the... Can I ask you a question about that? Because I spent a lot of time on that issue. And I guess I understand there is some potential double counting that went on here, which I'm going to ask your adversary about. But the bottom line is, in the verdict sheet, the jury came up with $2.17 million as a separate entry for front pay and back pay under New York state law against your client, right? So that was a separate entry. And it's not clear from the record, but I assume the city is going to pay that, right? Isn't the city going to pay that? Or am I wrong about that? Well, up to this point, they have indemnified my client pursuant to public officer's law 17. Okay. So that's a separate number. And then the jury, when they were asked what's under 1983, what's the hostile work environment damages against your client in particular, just against your client, they came up with $1 million. So it's clear that whatever other double counting went on, that they believed that the emotional harm that your client imposed upon the plaintiff here was worth $1 million. And the judge obviously remitted that down to $500,000. So I don't understand how any of these other double counting issues affect that. Am I missing something? Our point is that the amount of the verdict is grossly over excessive according to the case law we cited in our brief. So your point is not that it's duplicative. It's just excessive. Yes. Okay. Well, you've reserved two minutes for follow-up questions. We'll hear from your adversary, Ms. Shoemaker. Good morning, Your Honors. May it please the Court. Plaintiff's motion in Lemonade described how several of the tests used by Dr. Fisher did not meet the requirements of the federal rules, and we submitted affidavits, two affidavits along with several exhibits to support the position in those affidavits, one being our own expert witness. We submitted attachments that detailed the issues with each of the tests at issue here. And by the way, I would add that we did move to preclude the testimony of the expert altogether. The judge rejected that very soundly. He said that we had the opportunity to cross-examine the expert, that we could call his credibility into question on the stand. Defending Cure chose not to call their expert witness during trial as an expert, and that's on them. He issued a 50-page report, and less than one page of that report discussed these tests that are at issue here. In his conclusion section, he did not link those tests to his conclusion. He essentially talked for 49 pages about him assessing the credibility of our client, his observations, things like that, and the State and the Defending Cure chose not to call him as a witness. So that's not Ms. Small's issue. We asked for his testimony to be precluded altogether, and that argument was rejected. These tests that are at issue, though, these are tests that are not commonly used in the scientific field. Our own expert hadn't even heard of one of the tests, and the other two had some very specific issues with them that he detailed in his affidavit. So, for example, the MSPQ, the Modified Somatic Perceptions Questionnaire, it has to do with physical pain and suffering, and our expert put forth that position in our affidavit. It went unrebutted. There was no response to that. The Green's Word Memory Test, that was a neuropsychological measure. Our client did not complain of any neuropsychological issues. It has to do with cognitive impairment like Alzheimer's, dementia, stroke. Not applicable to our case, and we put that position forth in our expert's affidavit. Again, unrebutted. Finally, the MMPI, specifically the Fake-Bad Scale, it's been strongly critiqued, and there have been findings that it's biased against minorities and women. We put that in our affidavit, and it went unrebutted. Defending Cure never asked for a hearing. He never even asked for oral arguments. To hear him say now, to hear his counsel say, well, we weren't given an opportunity for oral arguments. He didn't request it. In fact, he did not even respond to the three tests that we asked the court to preclude. He never even responded to that part of our argument. He just said that it was premature, misplaced, and inappropriate. I think the court found very correctly that that was not a sufficient response to rebut the affidavit and the evidence that we put forth saying that these tests were not reliable. We don't see any reason to set aside the judge's decision on that. Can I just ask you to address the point that he made today is that he was incorporating, I didn't see it in his affirmation, but he says he was incorporating the state's opposition. Frankly, I don't even know if we have the state's opposition. First of all, did he do that? Second of all, was there anything in the state's opposition that added to what he submitted? First of all, the state's opposition papers are not contained in the joint appendix. There was no mention of our motion to preclude Dr. Fisher or those three tests in the state's affidavit or submission. They may have incorporated it. I think actually Mr. Wujcik may have done the affidavit and then the state prepared the memorandum of law, but it's not even contained in the record, so I'm not positive that they didn't submit their own affidavit. I am positive that they did not address that in any of their submissions. Now to say, first of all, a whole year went by before they even asked to re-argue the motion and whether or not we were talking about settlement, parties can talk about settlement at any point. There's no requirement that the case doesn't still continue on while settlement talks are happening. For him to say that that's why he didn't file a motion to re-argue until the eve of trial more than a year later, that just really doesn't strike me as very credible at this point. It really obviously didn't persuade Judge Scrutiny. They had ample opportunity to ask for a hearing, to ask for the court to look at the test. They did none of that. All they had to do was submit an affidavit from Dr. Fisher, who whether or not he's out of the country, I'm sure that he had access to technology, so certainly they could have either submitted something from him or they could have said to the court, look, our expert's out of the country, we need some extra time, and I'm positive that Judge Scrutiny would have issued that. He was very accommodating to both sides throughout the history of the case. We don't think, or judges rather, we don't think that the expert preclusion of those tests should be set aside. Now, turning to the issue of a new trial, first of all, it was confusing to me in reviewing Mr. Keir's brief, whether they were seeking a new trial on liability. There was no transcript of the trial attached. There were no exhibits attached. It's hard for me to determine what it is that they're seeking a new trial for or whether or not they think that the jury's verdict was against the weight of the evidence. It was difficult to determine whether that is the argument that they were making. The jury did not reach an erroneous result. There was a mountain of evidence presented at trial. There were 14 witnesses. There were over 150 exhibits, and I might add that I think 146 of them were ours. We called the vast majority of the witnesses. Mr. Keir did not call one witness in defense of his position. He never seriously rebutted my client's testimony. He never put forth any evidence other than a cross-examination to call into question her story or what it was that she was testifying about or what all this evidence meant. They have a very heavy burden when they're trying to overturn a verdict, and they simply have not met that burden here. One question about damages. Again, I'm not sure that this matters given the remediator here, but the jury awarded $1 million against defendant Cure for compensatory damages under the federal hostile work environment claim, which as I said to me was emotional harm because the front and back pay was a separate entry. But then they awarded $680,000 against Cure for aiding and abetting a hostile work environment under state human rights law. I guess I don't understand how you could have two different amounts for the exact same harm against the same person. Am I missing something there? It's impossible to know without polling the jury what they were thinking when they came to the amounts they determined. But a couple of things here. One is that defendant Cure had an opportunity to object during the trial after the jury issued their verdict. They did not do that. So it's our position that they waived that argument. The rules are very clear that there is a time to make objections. They simply haven't done that here. It's impossible to know what the jury was thinking when they were allocating damages and determining how much under each individual claim should be awarded against each individual defendant. There were several theories of liability presented from us. There were several different amounts of jury instructions that were read. It's really difficult to know how they interpreted each particular cause of damages pursuant to those causes of action. That's the same claim. There's no way. It's the same claim. It's not as if they allocated different amounts for different claims. You could have a potential problem there. But like you said, there could be something we're missing there. This is the same claim. There's no difference. One is federal and one is state against the same defendant. The damages between the two claims. They may have said, well, the whole total is $1.68 and we're going to split it between these two claims because we don't know how to allocate it. That would be wrong. That would be wrong as a matter of law. Unfortunately, I think... Go ahead and answer Judge Bianco's question and I'll follow up. I think we don't know what they were thinking when they made their determination and we don't know why they allocated certain dollars amounts for each particular claim. There were different theories presented to the jury. Like I said, there were 14 witnesses, almost three weeks of testimony, 150 exhibits. It's very difficult to know what they were thinking when they allocated damages against each individual. Were there different theories as to injury? Well... Correct. Not with respect to this individual defendant. Obviously, there were three individual defendants and so there were different theories as to how those individual defendants damaged our client. But with respect to Officer Cure, he was one in the same. His actions from the beginning when the harassment started all the way up through... I understand that it's not with respect to an individual defendant. I think we're talking about all the defendants and potential double counting. That's what is animating Judge Bianco's questions, as I understand. That's also part of what's animating my question. It's interesting because I would say that, again, nobody objected to the jury verdict after it came in. The state withdrew their appeal. They're not even saying that there's a double counting of damages. We don't know how they calculated their damages. As far as whether or not who's going to be paying the award, they refuse to commit the state. They refuse to say whether or not they're going to pay the award on behalf of Officer Cure until the case is finally decided. They won't even say that. I thought the judge said he was using the state claim advisory verdict on front back pay and was going to award that against the state, too, independent of whether they would indemnify. Didn't he say that he was imposing that on the state as well? He did. He did. So they have to pay. If they didn't appeal that, they have to pay that $2.1 million, right? That is correct. I'm saying, with respect to Officer Cure, they haven't committed, one way or another, whether they're going to indemnify him under the public offices law. For the remainder, you're saying. For the remainder. Right. Okay. Is there anything further, Ms. Shoemaker? Judge, I just think that the bottom line here is that procedurally, the defendants were required to put their objections on the record, and they didn't do that. Their time to object now has passed, and so they didn't object to. Now, what they're saying is double-dipping of damages. Well, no. He's actually not saying that. He affirmatively just told us. And we'll hear again from Mr. Woodchick to believe that he just affirmatively told us that he's not making an argument, a duplicative damages argument. Okay. Thank you very much, Mr. Woodchick. Thank you. Yes, Your Honor. Just briefly, in response to the position about the expert witness and putting him on to testify at trial, basically, you're asking an individual to testify at trial and then ask him how he got to his answer and to his opinion, and we are precluded from bringing that up. So, it really... And after a three-week trial and talking with our client, it was determined that we weren't going to put him on the stand because he had ethical... the expert, honestly, had ethical issues with going on the stand because we were pigeonholed on what he could testify about. And so far as this jury objection, basically, the court convened a hastily convened conference. The jury instructions were went over. I objected to them, and then the jury comes in the room. I mean, I guess I could stand up after the court says, okay, anything else, and the objection is noted, and then when the jury comes in, stand up and object again. But I don't think that that... And he waivers. Of the objection. Well, he asked, does anybody have any issue with the verdict form? And he said, no, Your Honor. I mean, I read that myself. He said, anybody have any objection to the verdict form? And he said, no. So, I don't understand why that's not waiving. Because they... Well, I see your point, Your Honor, but I guess the way that the court convened it, I perhaps should have said yes, just for purposes of the record. Mr. Ruchik, there's, you know, on appeal, there are many cases where someone should have said X, Y, or Z and didn't say it, but that's sort of the end of the story. I understand that, Your Honor. You didn't object. Okay. Is there anything further, Mr. Ruchik? Not unless the court has anything for me. Okay. Mr. Bianco? No, thanks. Mr. Clark? No, thank you. Thank you very much. We will reserve the decision, and that concludes today's regular argument calendar. I'll ask the clerk to adjourn court. Thank you, everyone. Court stands adjourned. Goodbye.